Cartter, Ch. J.,
delivered the opinion of the court:
After stating the facts, he proceeded to say, in substance, that it cannot be disguised as a fact established by the proofs in this case, that Dolía Mullen knew when the property in question was transferred by a conveyance to John L. Harmon; and that with full information on this subject, she at least, by her silence, acquiesced in his possession, accompanied with a claim of title for a period, a little indefinite to be sure, but certainly for sixteen or seventeen years. She did not die uptil immediately before the commencement of the war. She appears to have gone out of possession and Harmon to have gone in about the same time; so that she, at all events, seemed to believe that Harmon was entitled to the premises. It was not until four days before the expiration of twenty years from the time of Harmon’s purchase that the first action in ejectmeut was commenced by her heirs. Now, admitting that it was not in the power of Dyer to create by his will a title in his devisee, still the conveyance of his wife to Harmon could perform the office of giving color of title to the possession that accompanied it. "We think it did this effectually, and it is properly to be considered in evidence here of an interest in the laud adverse to every other claim.
On May 16, 1863, the ejectment was commenced, and if the recovery in that action had remained unimpeached, its effect would have been to destroy the adverse character of possession by the Harmons. But the execution of that judgment was enjoined perpetually by a decree in equity. We think the decree was as broad as the judgment and neutralized its effect. The bill in equity alleged that the judgment was fraudulent and void as against the heirs of Harmon, for the reason that the suit was commenced against a man who had been six years in his grave, and the service of process therein had been imposed upon a man not a party to the suit, under the representation that if he did not acknowledge a service *300 made upon him, judgment would go by default, and other serious consequences would follow. The charge that the judgment was fraudulent appears to have been sustained by the court, and a perpetual injunction was decreed. This, we think, is the end of that matter, and the parties were left to enjoy their rights as if there had been no such recovery.
Matters remained in this condition until 1871, when defendants for the second time instituted another action of ejectment to recover the property, and these complainants succeeded in establishing a defense under the statute of limitations. The judgment upon an appeal was set aside, but on grounds which did not reach the merits of this defense. The cause went back to the Circuit Court, and the Mullens discontinued their action, leaving the complainant in a possession that had ripened into complete and perfect title.
The defendants, for the third time, have claimed title in their cross-bill, and the complainants ask to have the controversy settled, so that they may enjoy the qniet possession of the property thus acquired, released of this clamor against their title. They represent that this is necessary in order to enable them to partition, or to sell the land for its true and adequate value. The court below came to the conclusion that complainants’ title had been sufficiently established to justify a decree for that purpose, and after a thorough presentation of the case by counsel we have come to the same conclusion. Harmon entered into possession by virtue of a conveyance not strictly in accordance with law, but he honestly paid the consideration which satisfied the outstanding trust deed, and for a period considerably over twenty years he claimed title during his life-time, and his heirs after him. There have been two ejectment suits; the cloud of this controversy still hangs over the estate, and we think it ought now to be put to rest. We therefore order that the decree below be affirmed.